All right, our fifth case for this morning is Miller v. Southwest Credit Systems, 19-3283. And so, yes, we are to hear first from Mr. Brown, who I see here, and then from Ms. Malone. So, Mr. Brown, if you're ready, you may proceed. Yes, Your Honor, can you hear me okay? Yes. Thank you. All right. May I please report? The question before the court today is relatively simple. Does MONI, which on its face appears to be an acronym of some kind, sufficiently identify a company called Monotronic International, Inc., in a way that appellant Carolyn Miller was likely to understand? Mr. Brown, I'm not sure that MONI is an acronym. Rather, it sounds like it's the first four letters of monotronics. Yes, Your Honor, but the way that it was presented was as four capital letters. And if a consumer had never done business with the company, identifying itself by four capital letters, M-O-N-I, it on its face appears to be an acronym. It's not an intelligible word standing on its own, and it looks like any other acronym that a consumer would come across in ordinary life. Well, I'm not – this is our challenge, right? Our view is objective clarity. We're looking to determine what this – whether that – those four letters, that word portion meets that standard or not. And I guess my question goes to how much of a creditor's name is necessary? There's been discussion whether Amex or Citi is enough. And then, obviously, there's differing arguments between the parties whether or not M-O-N-I is enough. If we don't consider it to be an acronym, but rather we consider it to be a portion of a word, what is Appellant's argument here with regard to why that's insufficient under the applicable standard? Yes, Your Honor. Well, the change in how the company was presenting itself, previously as Monotronics International Inc., and then later as M-O-N-I All Capitals, occurred after – about two years after Ms. Miller had already terminated her relationship with that particular creditor. She had never been given notice that the name had changed or been shortened in any way, and she was left to wonder what M-O-N-I means. Can I interject, Mr. Brown? I mean, I'm going to take it even further than Judge Brennan just did. Suppose that it just said, creditor Delta, you know, and she looks at it and she thinks, Delta? You know, I don't recognize anything of that sort. Maybe she doesn't recognize M-O-N-I either, but the statute has a procedure for someone who's not sure who they're being told they owe money to, which is to contact Southwest Credit and say, tell me more about M-O-N-I or tell me more about Delta. So your argument has to be that the debtor needs to be able to look at whoever is written down under creditor and say, oh, yeah, I remember, you know, I had an account with monotronics, M-O-N-I might be that, or, you know, I have a Macy's account and maybe they're just misspelling Macy's, you know, or something. So why is it that the creditor, that the debtor has to understand that word rather than just if the debtor happens to be unsure, they go through the verification process? Well, that reason was set forth by this court in the precedence of Chouet and Janitos, which held that this information has to be disclosed to the consumer in a way that the recipient is likely to understand. And so regardless what the recipient can later do to clear up any confusion, there is still the affirmative obligation set forth in Section 1692G to present that information, and that has since been interpreted by Chouet and Janitos as doing it in a way that the consumer is likely to understand. So likely to understand, I mean, okay, I understand that somebody's being told you owe money to M-O-N-I. I may disagree with that, but I don't know whether it's a lack of understanding or a lack of a sense that, oh, yeah, you know, I used to have an account with them, and whether that's what needs to be triggered in the consumer's mind. Well, again, it's not so much what is actually triggered in the consumer's mind because we view it through the objective standard of the unsophisticated consumer. And so we look at an unsophisticated consumer standing in the shoes of Ms. Miller. Would that unsophisticated consumer be likely to understand what M-O-N-I is referring to or not? And Mr. Brown, if that unsophisticated consumer were, for instance, to go to Google and put in M-O-N-I, do you know what that unsophisticated consumer would, what that would yield, that search? I don't, and there's not really any evidence in the record on that point, but it's sort of beside the point because M-O-N-I was not the name that the creditor was using at the time that the consumer had a relationship with that creditor. So to take Judge Wood's example of Delta, Delta, likely referring to Delta Airlines, has been that company's brand name for decades. And when the consumer had a relationship with that company, that company referred to itself as Delta, and the consumer understands that Delta is the person to whom they own money. In this context, by contrast, the name change occurred after she was done with her dealings with them. So if we compare it to Strickland, Zwicker, and Bode, which talk about it being okay to a common trade name, in all of those cases, when the consumer was doing business with that company, that was how they referred to themselves as. There was no subsequent name change that the consumer expected to track. And then you combine that with the fact that, again, in Zwicker, Strickland, and Bode, the companies were American Express, Capital One, and Sprint. These are all large national companies that have been branded that way for decades, and they've been pushing that branding out to consumers in magazines, television commercials, billboards, internet advertising for decades. Here by contrast, Monotronics is not nearly as large of a company, and the name change to MONI lasted for only 16 months before the company abandoned that branding strategy and instead was going under the new name of Brinks Home Security. So to expect a consumer who had terminated their relationship two years prior to be tracking the evolving branding of one of their minor creditors, as that branding changes literally in dozens of months, is simply unreasonable. And the case law says, again, that this is supposed to be presented in a way that the consumer is likely to understand. And a consumer is not likely to understand a small company's rapidly evolving brand strategy over a period of just a couple of years. I see that I'm at the three-minute mark, and so I'd like to reserve the rest of my time for rebuttal unless the Court has any further questions. That would be fine. Thank you. Ms. Malone. Thank you, Your Honor. Can you hear me okay? Yes, ma'am. I had a little technical difficulty earlier, so I actually really did need to check. I think 1692G requires that the debt collection agency clearly identify the creditor. So can I ask, so you would concede that where the creditor line appears on this Dunning letter, in principle, it ought to reveal somebody that the consumer realizes that she once upon a time had a relationship with, or could it be just a totally random placeholder name? Your Honor, it cannot be a totally random placeholder name. It does have to be a name that has a relationship in some form. There is not a law that says that a company cannot change their name. For example, there's the case Stupiello out of the Ninth Circuit that talked about not putting in a formal name for AT&T, which was a really long legal name, that it was okay just to say AT&T. This court circuit has many cases along the same line. Can I give you an example then? I know this for personal reasons. A long time ago in a galaxy far, far away, the company that we know of as Exxon or Exxon Mobil was called the Humble Oil and Refining Company after Humble, Texas, which is actually the name of a town in Texas. That's where I am, Judge. Well, there you go. So you know. I'm from Houston. So if you had had that debt with the Humble Oil and Refining Company, then you got a letter saying, creditor, Exxon. Years later, you've closed the account down. You never had a relationship while they were known as Exxon. And actually, when they changed the name, they did a very comprehensive search to make sure that it was just a nonsense word, that it wasn't going to violate anybody's copyright and all the rest of that. So it's by design a meaningless word. Do you think that the debtor, the unsophisticated debtor, would look at the word Exxon and think, oh, I know. I read the Financial Times and the Wall Street Journal every day. I remember when Humble changed their name over to Exxon. I doubt it. Your Honor, I don't disagree. But the FDCPA actually has a provision, a section that was actually cited in this letter that specifically says, if you're unclear as to who the creditor is, contact us and we'll give you that information. But see, this is what takes me back. That was my first question. But it takes me back. Doesn't the law require this letter to trigger a brainwave in the debtor to the effect of, yes, I once had, you know, if you said M-O-N-I comma formerly monotronics or something, then I would have no sympathy for her position whatever because, you know, she had an account. But they didn't change the name until after she was done with them. That is true, Your Honor. But again, all the law requires is that you two clearly identify the creditor. At the time the letter was sent out, Monty was the correct name. So you would say at the time the letter was sent out, you could put Exxon in even though an unsophisticated consumer who didn't read the Wall Street Journal every day might not know that Humble had changed its name to Exxon? Your Honor, I think that because the way the FDCPA statute is written, you are required to put the correct name of the creditor at the time that you send the letter out. And then they have the provision that allows the consumer to verify. It is not confusing on its face, which is the point. The point is whether or not that would give the consumer information to identify who is claiming that money is owed to them. In this case, it was Monty. And to give them the statutory provisions that would allow them to question it if they were unclear as to the creditor what. But if you're going to rely on that, they could put, you know, ZZ Top in or something. They could put in anything, any nonsense word and just say, well, if you don't recognize that, just get in touch with us. No, Your Honor, if you remember what I'm saying is that they put the actual name of the creditor at that time. So, Monty was the name that Monotronics was using at the time that the letter was being sent out. And to that end, Your Honor, if you will recall in the record, less than 20 days after this actually sent a letter to my client and they didn't say, we don't know who this creditor is. All they said is we can't pay this debt right now and we think the debt amount is incorrect. Words that affect, I didn't quote it exactly. My point being that their attorney within 20 days of receiving this letter did not say, I don't recognize this debtor at all. I think that Judge Palmer's opinion is exactly the correct stance to take here. Because what she said is on its face, the letter is not confusing. There are a lot of folks, unsophisticated debtors, who would recognize Monty as their creditor. What she said was- Do we know that? Well, Your Honor, that's the point. She says on its face, it's not confusing. If it could potentially be confusing, then it was incumbent upon the plaintiff to produce evidence of an extrinsic nature to go back at that. Once we've shown the letter is clear on its face, then the law gives the plaintiff a second bite at the apple. To be honest with you, if they can show some evidence from an extrinsic nature that somehow makes that what is a clearly stated letter confusing, then they have the opportunity to bring forth that evidence. They did not, Your Honor. They simply never brought anything other than her own statement, which as the court knows, is not enough to show what an unsophisticated consumer would be if it is a clearly written statement. There's nothing that is unclear about who the name of the creditor is, is that it's Monty. If she wants to say it is confusing, then it was incumbent upon them to bring evidence to that effect. They did not, Your Honor. And that's what makes this such a different situation. Yes, sir. Yeah. So the very fact that when you turn to Chief Judge Pallmeyer's reasoning, the very- that kind of second step, if you will, that it was incumbent upon the plaintiff to go to extrinsic evidence, that suggests, does it not, that the answer to Judge Wood's question is yes. That the name has to trigger some kind of recollection if the plaintiff- that's not your argument. This is the point I'm making. I want you to respond to it. And if the plaintiff says, I don't have any idea. I don't know who XYZ Company is.  That your point as well? All right. If that's confusing to you in one way or another and you can't recognize the creditor, you need to produce extrinsic evidence that way. The question that I have is this. Doesn't that risk turning 1692G into 1692E? 1692E is all about misleading communications. Confusing or misleading. False, confusing, misleading. And so, what I thought about 1692G was, and maybe I'm wrong, that wouldn't be the first time, just list the creditor. And if you list the creditor, you're okay. But, Your Honor, we did list the creditor. The creditor was Monty at the time. So, what you're now telling us is- That wasn't the official name, though, ever, was it? Wasn't that just a branding name? Yeah, you don't have technical compliance. I mean, you don't have literal compliance. I mean, you may be close enough, but you don't have literal compliance, right? If it put Monty Tronics, Inc., this argument would be a lot shorter. It would, Your Honor. Unfortunately, the situation was this was two years into their using Monty as a name that they were doing. And the case law is pretty clear that they're allowed to use a name that is recognized. In fact, I think there are cases that are cited in our brief which point out that you're not required to give them every potential variation of a name that a creditor could have used. And the Seventh Circuit has been pretty clear that that's not a requirement for the defendant. And Ms. Malone, your argument is that that was the name being used. Your argument doesn't go to, say, for example, the number of characters that are available in that box on the Dunning letter for the description? No, Your Honor. It does not go to the number of characters. It is simply that that was the name Monty Tronics was using in its business at that time, which was Monty. It changed only a few weeks later, didn't it? This is a March 29 letter. When did it change to Brinks? Your Honor, that was actually not part of the original record, and that was part of a bankruptcy matter that was done. It was not long afterwards. You're right, though, Your Honor. Yeah. But that was not I would point out that was not part of the original Sermon judgment record. That was before Judge Palmar. And there was no evidence of that ever produced in the case. Actually, it might have. The thing that you're objecting to, the bankruptcy filing, does say it was February 26, 2018, that Monty Tronics announced the Brinks license agreement, and they complete the rebrand in the second quarter. But I'm not going to worry too much about that, so. The account would have been placed with Southwest Credit in 2017, Your Honor, so they would have come over to them as Monty, regardless. I think it was the end of 2017 when it was originally received. So they would have come over with Monty as a group of accounts altogether. So, again, I think Judge Palmar is exactly right. On its face, the letter is not confusing. You're right. And if she—I'm sorry? Your time is up, so— I apologize. All right. That's it, Your Honor. Thank you very much. Anything further, Mr. Brown? Yes, thank you, Your Honor. I think the question here, again, that the Court has kind of identified is where does the burden lie with respect to getting the consumer to know who the creditor is when they receive a Dunning letter from a creditor? And Southwest's position is that, well, it's basically up to the consumer to figure it out. We told you enough, so, you know, respond to us if you need to. Do some internet searches if you need to, but you've got to go figure this out. Whereas what Chuey and Genito stand for is that, no, the debt collector has the obligation to present not just the name, but to communicate the name in a way that the recipient is likely to understand. As Genito said, just slapping a name of a creditor on a Dunning letter is not sufficient. It has to be adequately communicated. And when you have a situation where you have a company changing names, you know, in two years—the Money brand rollout was only 16 months long—and that occurred two years after the consumer had already terminated her relationship with this creditor, it's simply unreasonable for a debt collector to say, well, I'm going to pick this name that was temporary, might even not be in use anymore, but that's the name that I was told a year ago when the account was placed with me, so that's the name that I'm going to use. And if you don't understand, it's on you to figure that out. So let me just push back and say, you know, the debt collectors are in a volume business, right? And so what you're saying is they can't just take the name that the client is using at the time the debt package—it's probably a package of debts—is turned over to them and then just go forward with that name. They have some extra burden to figure out what's going on with the corporate naming before they send out Dunning letters? Well, this is, again, a very simple issue, Your Honor. The name, the legal name, remains Monotronics International Inc. through all of its branding evolutions. And as the Court has already identified, if this Dunning letter said Monotronics, or M-O-N-I, formerly known as Monotronics, or something along those lines, we would have no case because my client would have understood precisely who this creditor was. But because the debt collector chose to use a temporary branding rollout as the way to identify the creditor, they did not meet the burden that's set forth in Chouet and Janito. So would you say that there's a safe harbor if the debt collector always uses the official corporate name, doesn't happen to ring a bell for people? Well, I'd say it'd be a much more difficult case if they use the full legal name, and that was the legal name that the entity was known as, even if they had a branding strategy that used something else. A much more difficult case. But again, the goal here and the burden, as stated in Chouet and Janito, is to communicate the information in a way that the consumer is likely to understand. And so here the burden was very simple and straightforward. Southwest chose to use a temporary, unknown-to-my-client brand rollout, and that simply wasn't enough. Okay, I think we'll have to stop there. But thank you very much, Mr. Brown. Thank you, Ms. Malone. We'll take the case under advisement.